UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 1036, Petitioner,

Phillip Mulder; Charles Buck; Leon Gibbons; United Food and Commercial Workers Local 7; United Food and Commercial Workers Local 951, Intervenors,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

Glenn Hilton; United Food and Commercial Workers Local 951, Respondents–Intervenors.

Phillip Mulder; Charles Buck; Leon Gibbons, and Glenn Hilton, Petitioners,

v.

National Labor Relations Board, Respondent.

Rebecca McReynolds; Barbara Kipp, Petitioners,

United Food and Commercial Workers Local 7; United Food and Commercial Workers Local 951, Intervenors,

v.

National Labor Relations Board, Respondent.

National Labor Relations Board, Petitioner,

United Food and Commercial Workers Local 7; United Food and Commercial Workers Local 951, Intervenors,

v.

United Food and Commercial Workers Union, Local 1036, Respondent.

National Labor Relations Board, Petitioner,

v.

United Food & Commercial Workers Union, Local 951, Respondent.

Nos. 00–70156, 99–71442, 00–70189, 99–71596 and 99–71317.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 2001

Filed May 17, 2001

David A. Rosenfeld, Van Bourg, Weinberg, Roger & Rosenfeld, Oakland, California, for petitioner/cross-respondent UFCW Local 1036.

Glenn M. Taubman, Richard J. Clair, National Right to Work Legal Defense Foundation, Inc., Springfield, Virginia, for the petitioners/intervenors.

Fred L. Cornnell, Steven B. Goldstein, National Labor Relations Board, Washington, D.C., for respondent/cross-petitioner National Labor Relations Board.

James B. Coppess, AFL–CIO, Washington, D.C., for intervenors UFCW Locals 7 & 951.

Before: NOONAN, McCKEOWN, and WARDLAW, Circuit Judges.

Opinion by Judge NOONAN; Concurrence by Judge WARDLAW

NOONAN, Circuit Judge:

In these consolidated cases, Phillip Mulder, Charles Buck, Leon Gibbons, Glenn Hilton, Rebecca McReynolds and Barbara Kipp (the petitioners) petition for review of an order of the National Labor Relations Board (the Board or the NLRB) holding that they as nonmembers of a union may be charged under union security agreements with their employers with a fee related to the union's activity directed to organizing employees of the employers' competitors. The Board cross-petitions for enforcement of its order. We hold that organizational activity is not necessary for the union's performance of its duties as the exclusive representative of the employees. To require non-member employees to fund such activity is not authorized by section 8(a)(3) of the National Labor Relations Act (the NLRA), 29 U.S.C. § 158(a)(3). Accordingly, we grant the petition for review, vacate the order of the Board, and remand for entry of an order holding Locals 7 and 951 of the United Food and Commercial Workers (the UFCW), to have violated section 8(b)(1)(A) and (2) of the NLRA, 29 U.S.C. § 158(b)(1)(A) and (2), and providing a remedy for the violations.

UFCW, Local 1036 (Local 1036) petitions for review of an order of the Board holding that Local 1036 violated section 8(b)(1)(A), 29 U.S.C. § 158(b)(1)(A), by informing new employees that they were required as a condition of employment to become full members of Local 1036. The Board cross-petitions for enforcement of its order. We hold that Local 1036 did violate section 8(b)(1)(A) but that the Board's remedial order is too broad. Accordingly, we reverse the Board and remand for the Board to draft an order better tailored to the violation.

## FACTS AND PROCEEDINGS

It is uncontested that the petitioners, employees of grocery and general merchandise retail businesses having union security clauses in their respective collective bargaining agreements with locals of the UFCW, are non-members of the union who objected to paying fees for the organizing activities of the UFCW; that the union did charge nonmembers for such activities; and that the locals continued to exact the fees over the objection of the petitioners. The petitioners brought unfair labor practice charges against the respective locals.

After a trial, Administrative Law Judge William J. Pannier III dismissed the charges that Locals 7 and 951 violated section 8(b)(1)(A) of the NLRA. A divided Board sustained the dismissal. Noting testimony both by economists and by union officers, the Board found the record to contain persuasive evidence of a positive relation in the retail food industry between the unionization of employees and negotiated wage rates. When more competitors faced union wages, management was willing to negotiate. "We don't mind paying the wages as long as everyone else is paying the same thing" was said to typify the prevalent attitude of employers. The Board concluded that the non-members benefitted from the union organizing employees of the other employers and that this activity was fairly chargeable as representational.

The NLRB acknowledged one problem in reaching its conclusion. In *Ellis v. Brotherhood of Railway, Airline and Steamship Clerks,* 466 U.S. 435, 452, 104

S.Ct. 1883, 80 L.Ed.2d 428 (1984), the Supreme Court of the United States held that under section 2, Eleventh of the Railway Labor Act (the RLA), 45 U.S.C. § 152, Eleventh, a union was not permitted to charge non-members for the union's organizing activity outside of the bargaining unit. Then in *Communications Workers of America v. Beck*, 487 U.S. 735, 745, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988), the Supreme Court held that, despite other differences in the statutory schemes, section 8(a)(3) of the NLRA and section 2, Eleventh of the RLA are "in all material respects identical." If the Supreme Court was taken at its word, that Court had already determined that organizational expenses were not chargeable to nonunion members.

The Board met this difficulty by stating that "precedent under public sector labor law and the Railway Labor Act, although possibly providing useful guidance, is not binding in the context of the NLRA." The Board went on to note that the Supreme Court in deciding *Ellis* had relied on the legislative history of the 1951 amendment that added section 2, Eleventh to the RLA. The major purpose of the RLA, to prevent strikes in the transportation industry, was different from the major purpose of the NLRA. Further distinguishing the two laws, the Board observed that when the RLA was enacted in 1926, railroad employees were already substantially organized; there was no reason for Congress to contemplate further organizing by the existing unions. Finally, the Board stated that in *Ellis* the only benefit to be achieved by organizing was a stronger union; here the Board found a tangible relation between increased unionization in the same industry and increased wages for all employees in the bargaining unit. The Board was satisfied that it had distinguished *Ellis*. As to *Beck*, the Board followed *International Ass'n of Machinists and Aerospace Workers v. NLRB*, 133 F.3d 1012, 1015

(7th Cir.), *cert. denied*, 525 U.S. 813, 119 S.Ct. 47, 142 L.Ed.2d 36 (1998), in holding that *Beck* left open what union expenditures could be charged to objectors under the NLRA.

A second issue before the Board was whether Local 1036 had violated § 8(b)(1)(A) of the NLRA by a welcome letter to new employees in which the union informed them that they were required to become full members of Local 1036 as a condition of employment and did not inform them that they had the right to be nonmembers of the union and the right not to be charged by the union for nonrepresentational activities. The administrative law judge found the letter to be a violation, and the Board agreed. As a remedy for the violation, the Board required Local 1036 to notify all bargaining unit members of their rights and to reimburse nunc pro tunc the employees subject to the union security clause after September 3, 1988 who now objected to being full union members.

The petitioners seek review of the Board's order as to organizing expenses. Local 1036 seeks review of the Board's order as to the welcome letter. The Board seeks enforcement of its orders.

## ANALYSIS

■ On the main issue, the chargeability of organizing expenses, the Board stands on its decision and asks us to enforce it with the deference due an administrative agency interpreting an ambiguous statute in the area of the agency's expertise. *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). That the tie between wage benefits for existing bargaining units and the organization of new bargaining units was disputed and may not exist in all industries or at all times is irrelevant to this ap-

proach. Substantial testimony supports the conclusion of the Board; it has resolved the disputed testimony by finding that, at least in the retail chain businesses involved here, a link between organizing and benefits to bargaining units does exist. The Board has defined, at least in the context of these cases, representational work by a union to include the union's organizing activity beyond the existing bargaining units.

■ If that were all that was before us, enforcement of the Board's order would be our obvious duty. But the Board does not have a free hand to interpret a statute when the Supreme Court has already interpreted the statute. *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 536–37, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992). Here the Supreme Court has already interpreted section 8(a)(3).

In *Ellis*, the Supreme Court held organizing expenses to be "outside Congress' authorization" in section 2, Eleventh of the RLA. *Ellis*, 466 U.S. at 451, 104 S.Ct. 1883. In *Beck*, the Supreme Court held that section 8(a)(3) of the NLRA and section 2, Eleventh of the RLA "are in all material respects identical." *Beck*, 487 U.S. at 745, 108 S.Ct. 2641. The Court reached this conclusion in deciding whether the financial core requirement of a union security clause "includes the obligation to support union activities beyond those germane to collective bargaining, contract administration, and grievance adjustment." *Id.* Deciding this question in the negative, the Court repeated its description of section 8(a)(3) and section 2, Eleventh as "statutory equivalent[s]." *Id.* (citing *Ellis*, 466 U.S. at 452 n. 13, 104 S.Ct. 1883). Noting that in amending the RLA in 1951, Congress had "expressly modeled" section 2, Eleventh on section 8(a)(3), the Court declared: "In these circumstances, we think it clear that Congress intended the same language to have the same meaning in both statutes." *Id.* at 746–47, 108 S.Ct. 2641.

In the face of the declared equivalence of the two statutes, the Board's effort to distinguish *Ellis* fails. If the language in one has the same meaning as the language in the other, then organizing expenses cannot be nonchargeable under one statute and chargeable under the other. A material difference cannot be found between the two statutes on the ground that they deal with different industries. Congress, the Court has determined, meant union security agreements to embrace only such charges as did not intrude upon the First Amendment rights of non-members. *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 519, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991). Although the Court's decisions in this area "prescribe a case-by-case analysis in determining which activities a union constitutionally may charge to dissenting employees," the Court has already established "several guidelines to be followed in making such determinations." *Id. Ellis* and *Beck* are such guidelines. As *Lehnert* illustrates, the RLA cases, including *Ellis*, function to determine the scope of chargeable activities under the NLRA § 8(a)(3). *Id.* at 514–19, 111 S.Ct. 1950.

In enacting section 2, Eleventh, "organizing efforts were not what Congress aimed to enhance by authorizing the union shop." *Ellis*, 466 U.S. at 452, 104 S.Ct. 1883. "[I]t may be that employees will ultimately ride for free on the union's organizing efforts outside the bargaining unit," but "the free rider Congress had in mind was the employee the union was required to represent and from whom it could not withhold benefits obtained for its members. Nonbargaining unit organizing is not directed at that employee." *Id.*

The Board, we have noted, took courage from the Seventh Circuit decision in *International Ass'n of Machinists*, 133 F.3d at

1015–16. But that opinion did not take notice of the statutory equivalence established by *Beck*. Consequently it is no authority for disregarding that equivalence here.

■ The Board presents a case for rethinking the *Ellis–Beck* equivalence of section 8(a)(3) and section 2, Eleventh. The Board does not have the power to reverse the Supreme Court. *See State Oil Co. v. Khan*, 522 U.S. 3, 20, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997) (discussing rule of stare decisis). Accordingly, its order must be vacated, and the case returned to it for an order upholding the rights of the petitioners.

■ As to the second issue, Local 1036 admits that its welcome letter to new employees was "inartfully worded to suggest that employees had to do more than pay dues and fees." The Board was not unreasonable in finding that the letter did not adequately advise the new employees of their rights under *NLRB v. General Motors Corp.*, 373 U.S. 734, 742, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963) and *Beck*. But the Board's remedial order goes too far. The offending letter was not sent to all employees. Reimbursement is due only those employees who received the letter and object. The remedy designed by the Board must be modified.

Accordingly, enforcement of the Board's orders is DENIED. The petitions for review are GRANTED. The cases are REMANDED to the Board for action in accordance with this opinion.

WARDLAW, Circuit Judge, concurring:

I agree with the majority that we are bound by the Supreme Court's decisions in *Communications Workers of America v. Beck*, 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988), and *Ellis v. Brotherhood of Railway, Airline, and Steamship Clerks*, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984), to reverse the decision of the Board. Neither the Board nor we can alter or even meaningfully distinguish *Beck*'s twin holdings that (i) NLRA § 8(a)(3) and § 2, Eleventh of the RLA are "statutory equivalents," which (ii) preclude charging organizing expenses to objecting nonmembers. This rule would make sense in an industry and a competitive environment where no benefit inured to the nonmember objectors from uniform wage and benefit standards. But here, after reviewing academic research, empirical data and specific evidence as to the direct, positive relationship between the extent of unionization of employees and negotiated wage rates in the retail food industry, the Board concluded otherwise. It is troubling that *Beck* precludes us from giving the deference to the fact-finding and expertise of the agency charged with administering the labor laws that it would otherwise be accorded under *Chevron, U.S.A. v. NRDC*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). As Judge Posner, writing for the Seventh Circuit, has noted:

> It is hard to think of a task more suitable for an administrative agency that specializes in labor relations, and less suitable for a court of general jurisdiction, than crafting the rules for translating the generalities of the *Beck* decision (more precisely, of the statute as authoritatively construed in *Beck* ) into a workable system for determining and collecting agency fees.

*Int'l Ass'n of Machinists & Aerospace Workers v. NLRB*, 133 F.3d 1012, 1015 (7th Cir.1998). I respectfully submit that a case-by-case, industry specific approach, *see Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 519, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991), which applies *guidelines*, not categorical rules, is the preferable approach. Not being presented with that

option in this case, however, I concur in the majority opinion.